Heman *v.* French.

[*General Term, April,* 1873.]

## LEWIS A. HEMAN *v.* MATTHIAS FRENCH.

If an employe of a banker, in the absence of the latter, violates the rules of the bank, by not demanding payment of the maker of a promissory note falling due and giving notice of dishonor to the indorser, so as *prima facie* to charge him, and such banker insists upon holding the employe responsible for the amount of such note, and the latter acquiesces, takes possession of the paper with the banker's consent, sues the indorser upon it in his own name, and the banker appears as a witness at the trial, and states such facts and makes no claim to the note, he will be *estopped* from claiming against the indorser that he is the owner of such note, and the employe may recover upon it as the owner and holder.

Where a note is payable at no specified place, if the maker during the last business hour of the day on which it falls due, goes to the holder and advises him that he can not pay it, having no money, and asks for a few days' indulgence which is granted, that will authorize a jury to find that there was a sufficient presentment for and demand of payment, though the holder wholly fails to make presentment and demand at the maker's place of business; and, in such case an indorser can not insist that no proper presentment and demand were made.

And if, in such case, the indorser accompany the maker to the holder and hears the agreement between them, and does not object thereto, a jury may find that he assented to it and to his continued liability, and *waived* the requisite *formal* notice to him of the non-payment of the note by the maker upon presentment and demand, and the holder may, if such facts be found, recover against him as indorser.

*Shonter & Smith,* and *Stallo & Kittredge,* for plaintiff in error.

*A. Taft,* for defendant in error.

YAPLE, J. Lewis A. Heman, claiming to be the owner and holder thereof, sued Matthias French, as indorser, upon the following promissory note:

"$1,000. CINCINNATI, *January* 9, 1872.

"Six months after date, I promise to pay to the order of Matthias French one thousand dollars, payable with eight per cent. interest from date.

"JOSEPH MESTEMAKER."

Indorsed:

" Pay to the order of J. F. Menkhaus.

"MATTHIAS FRENCH."

" Pay to the order of Lewis A. Heman.

"JOHN F. MENKHAUS."

The case was tried to the court at Special Term upon submission by the parties, a jury having been waived, and resulted in a finding and judgment for the plaintiff for the amount of the note and interest. A motion for a new trial was made by the defendant, overruled by the court, a bill of exceptions taken embodying all the testimony, and the case brought here upon petition in error to reverse such judgment.

1. It is claimed by French that Lewis A. Heman was not the owner of the note, but that the banking firm of Joseph A. Heman & Co. were the real parties in interest.

2. That French is not liable as indorser, because the note was not presented to the maker and payment demanded when it became due, and because no notice of such presentment and non-payment was given to him for the purpose of charging him as indorser as required by law.

3. And that, without his knowledge or consent, for a sufficient consideration, time for payment was given by the holders to the maker, Mestemaker, on the day the note fell due.

It is a fact admitted by both parties, that French indorsed the note to Menkhaus, and that he negotiated it to Joseph A. Heman & Co., bankers, before it became due; that the latter never indorsed it in writing to the plaintiff, but that that was done by the plaintiff's attorney, after it was left with him by the plaintiff for collection. The attorney was also the attorney of Joseph A. Heman & Co., which firm is in fact only composed of Joseph A. Heman, the father of the plaintiff—the plaintiff, and another son of his, being employed in the bank and paid by an interest in the business.

When this note fell due, Joseph A. Heman, the father,

was sick and absent from the bank, and the plaintiff did not follow the rules of the bank in having this note protested, or procure the indorser's waiver of notice of non-payment, etc., in writing, and he took the maker's check therefor, the maker having no money in bank to meet it, which check is as follows:

" CINCINNATI, *July* 12, 1872.

"Joseph A. Heman & Co. pay to note, due to-day, or bearer, one thousand and forty 70-100 dollars ($1,040.70).

" JOSEPH MESTEMAKER."

On learning this fact, Joseph A. Heman had the note entered upon the suspended debt account, and notified the plaintiff that he would hold him responsible for its amount, to teach him a business lesson; whereupon the plaintiff took the note and brought suit upon it.

Joseph A. Heman and his other son, employed in the bank, were witnesses upon the trial, and made no claim to any interest in the note.    The father, Joseph A. Heman, testified : " Instead of protesting the note, my son Lewis took the responsibility of not doing it, and has to foot the bill ; and it then became his note."

We think that this will forever estop Joseph A. Heman & Co. from claiming as against French that they, and not the plaintiff, own the note ; and they are estopped to claim that they own it as against the plaintiff.    It is a chose in action, and the title, unlike title to real estate, may be passed by parol.    The plaintiff, then, was the real party in interest, and entitled to sue.

Upon the other questions of fact involved in the issues between the parties, the plaintiff adduces testimony expressly tending to prove that before the note fell due, French came to the bank and requested that the note should not be protested, and stated that if the maker did not pay it he would ; and was told that it was not yet due. That on the day it fell due, between two and three o'clock in the afternoon (three o'clock being the hour for closing the bank), French and Mestemaker came to the bank, where

Mestemaker stated to plaintiff, in the hearing of French, that the note was due, but that he had no money to pay it, and desired to obtain an extension of time for thirty days, French to waive demand and notice; that Mestemaker and French went to the bank to effect such arrangement of the paper, but that plaintiff refused to accede to it, because Menkhaus, the other indorser, was not present, and unless he consented, he would be released. Mestemaker then stated that it was too late to hunt him up and bring him there before the bank would close, and that would render it necessary to protest the note. He finally agreed to, and did, leave the above-described check, which he thought he might be able to lift on the Friday following, by paying off the note, he having no money in bank—his account, on the contrary, being overdrawn. This the plaintiff accepted, and took no steps to protest the note and give French notice of demand and non-payment, etc. The plaintiff swears that French was present during all the time, and heard all; knew French had overdrawn his account, and made no objection to what was done.

Mestemaker, called as a witness by the defendant, gives the same account, substantially, of the transaction, but says that he does not know whether French was present when he gave the check, or not; that he left the bank before he did; that he was standing at the corner when he (Mestemaker) came out of the bank, and asked him how he had fixed it, when Mestemaker told him; to which French replid, "So, that is best," and they separated.

French differs totally in his testimony from all these witnesses. He says he insisted, both times he was at the bank, that the note should be protested; that he desired it to be collected.

The check was never entered on the books of the bank. Efforts were also made to get the money from Mestemaker for some time, prosecution for fraud being threatened against him; and it was the custom of the bank to protest

Heman v. French.

such notes invariably, unless the indorsers had waived demand and notice in writing.

In deciding the case, the first inquiry must be, what is legally and properly before us, sitting as a court of review upon errors assigned and alleged to have occurred at the trial, in applying and judging the testimony to ascertain the facts?

We certainly can not retry the cause, with a view to determine upon which side the evidence *preponderated* in relation to any material fact.    That was for the lower court to do.    "A judgment will not be reversed because the verdict is *contrary* to the evidence, unless it is *manifestly* so."    *Breese* v. *State*, 12 Ohio St. 146, 156.

This rule of law should be borne in mind; for it is too common, when a reversal of a judgment is sought by petition in error, on the alleged ground that it is manifestly contrary to the evidence (all the evidence being contained in the bill of exceptions), to argue the case as if it were being tried on such evidence, and that it should be determined upon the mere fair preponderance of the testimony. The reviewing court does not see and hear the witnesses; can form no judgment of the credibility due to their testimony; has not upon paper the surrounding circumstances, obviously taken for granted by the witnesses, and part of their evidence, and in the light of and by which it is to be construed; for they are obvious, and the words fewer, because they are so, and plainly understood, which no amount of writing could accurately convey to the reviewing court.

This was domestic paper, and did not need to be protested for non-payment by a notary; and for doing so, the holder could not recover the expense from the indorser. Presentment and demand and notice to the indorser thereof, and of non-payment, could all be proved by parol.    Such protest and written notice are proper, however, in order to furnish, preserve, and perpetuate more certain evidence than that to be afforded by the memory of witnesses.    So, too, it is not essential that an indorser should waive demand

upon the maker, and notice of non-payment, in writing. He may do so verbally. Such notice to him is no term of his contract of indorsement; it is a mere obligation cast upon the holder to use due diligence to collect from the maker, and, if he fails, to notify the indorser, that he may secure himself from the maker, because of his liability to pay the note. Further, the rule of law is founded upon experience in human affairs and the necessities attaching to commercial transactions. It is not supposed that when such paper falls due, the maker, indorser, and holder will all be present together, but that they will be at different places—often neither the maker nor indorser knowing who holds the note until such demand and notice are made and given; that, if not payable at a particular place, the holder will demand payment at the maker's place of business, and send notice to the indorser, through the post-office, to his address.

In this case, after the maker, Mestemaker, went to the bank on the day the note fell due, within the last business hour of the day, and remained there until near the close of that hour, telling the holder he had no money and could not pay, it was certainly unnecessary to go to his *place of business* and demand payment. The presentment and demand were sufficient. The indorser could not object that they were not. But, *prima facie*, the indorser would have been entitled to notice all the same. Now, if he went with the maker, and knew he could not pay (though such mere knowledge would not be a waiver of notice), heard the whole arrangement, and did not object, surely the court was authorized to find that he agreed to it, and waived the giving to him of a formal notice of a fact which he well knew—that is, that the holder had made a sufficient demand of payment upon the maker. The court was also authorized to find, that, had French objected, due demand would have been made and notice given to French in form. Substantially, the court so found, and we can not say that such finding was manifestly contrary to the evidence; even

Heman v. French.

if, had it found the opposite, we could not have disturbed the finding. We are satisfied that but for the presence and interference of French, the note would have been protested and notice given him in form; and he, and not the other party, must bear the consequences of his acts.

The plaintiff's own testimony makes out a case entitling him to recover, and he is corroborated by his brother, Ferdinand J. Heman, and by Mestemaker, for he does not know but what French heard every word of the arrangement. French, on the contrary, is so at variance with them all, that the court may well have thought, that, from forgetfulness or bias, his testimony was not entitled to much credit. Had the court wholly rejected the plaintiff's testimony and credited that of Mestemaker alone, so far as he was cognizant of French's presence, then the judgment might well have been for French, as he only knows certainly that he was advised of the arrangement after both left the bank, and that would not have concluded his rights. But the court could not do so without some good reason. It did not, and we can not find that there was error in not doing so.

The legal rights and liabilities of the parties were fixed when Mestemaker and French left the bank. What the bank or the plaintiff may have done afterward, toward compelling Mestemaker to pay the note, may have been done merely out of abundant caution, and to avoid, if possible, a lawsuit with French; or it may have been because it knew French had been released by the plaintiff's acts. It was competent as tending to prove the admission of such fact. The court trying the cause was the judge of its bearing and weight. The check does not purport to give time. It was due with the note. Mestemaker simply promised to pay on the Friday of that week; so it represented mere indulgence for a few days and obviated protest. Upon the evidence, then, we are not warranted in setting aside the judgment rendered by the court in Special Term.

Judgment affirmed.